1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7  MARZITA AGUILAR, ESTREBERTO AVINA, )      2:09-CV-01416-ECR-PAL
                                     )
8         Plaintiffs,                )
                                     )
9  vs.                               )      <u>Order</u>
                                     )
10 WMC MORTGAGE CORPORATION, et. al., )
                                     )
11        Defendants.                )
                                     )
12 _____  )

13

14        Plaintiffs in this case are homeowners who are in danger of
losing their property in Las Vegas, Nevada, through foreclosure.
15
The only remaining Defendant in the case is the original lender on
16
Plaintiffs' home loan, WMC Mortgage Corporation ("WMC").
17
        Now pending is WMC's Motion (#6) to Dismiss.  Plaintiffs
18
opposed (#11) the Motion to Dismiss (#6), and WMC replied (#19).
19
The motion is ripe, and we now rule on it.
20

21
                  **I. Factual and Procedural Background**
22
        On April 13, 2006, Plaintiffs purchased a home in Las Vegas,
23
Nevada, using borrowed funds.  (Compl. ¶ 8 (#1).)  WMC was the
24
originating lender.  (<u>Id.</u> ¶ 10 (#1).)  Plaintiffs became delinquent
25
on their mortgage payments. (<u>Id.</u> ¶ 14 (#1).)  On March 31, 2009,
26
Fidelity National Default filed a Notice of Default and Election to
27
Sell with the County Recorder's Office.  (<u>Id.</u> ¶ 14 (#1).)
28

Plaintiffs' Complaint was filed in Nevada state court on June 10, 2009.  Plaintiff named four Defendants in the Complaint – WMC, Wells Fargo Bank NA, Fidelity National Title Agency of Nevada, Inc. and Fidelity National Default Solutions.  Defendants removed the action on August 3, 2009, invoking this Court's federal question jurisdiction.  (Notice of Removal (#1).)

The parties have stipulated (## 10, 23 and 28) to the dismissal of Wells Fargo Bank NA, Fidelity National Title Agency of Nevada, Inc. and Fidelity National Default Solutions.  We approved (## 12, 24 and 19) the stipulations.  On August 13, 2009, WMC — the only remaining Defendant in the case — filed a Motion (#6) to Dismiss. On August 25, 2009, Plaintiffs responded (#11).  On September 8, 2009, WMC replied (#19).

## II. Motion to Dismiss Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)) (alteration in original).  Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party."  In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

2

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." In re Stac Elecs., 89 F.3d at 1403 (citation omitted).

Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is normally limited to the complaint itself. See Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed. R. Civ. P. 12(d); see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment." Ritchie, 342 F.3d at 908.

If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." Lee, 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." Ritchie, 342 F.3d at 908. Finally, if

3

adjudicative facts or matters of public record meet the requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to dismiss.  Id. at 909; see Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### III. Analysis

#### A. Wrongful Foreclosure

Plaintiffs' claim that the foreclosure on their home is wrongful rests primarily on the argument that Defendants have no right to foreclose upon their property because they have not produced the original note to prove the identity of the real party in interest.  An action for the tort of wrongful foreclosure will lie only "if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale."  Collins v. Union Fed. Sav. & Loan Ass'n, 662 P.2d 610, 623 (Nev. 1983).  The "material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised."  Id.

Plaintiffs admit that they were delinquent on their mortgage payments. (Id.  ¶ 14 (#1).)  Moreover, Nevada's foreclosure statute

4

is comprehensive and does not require production of the original note.  See NEV. REV. STAT. § 107.080.  Plaintiffs have thus failed to state a claim for wrongful foreclosure.

**B. RESPA**

Plaintiffs' second claim for relief alleges that Defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. ¶¶ 2601-2617.  The alleged conduct underlying this claim is as follows: "The Mortgage Loan was sold, transferred and/or assigned without advising Plaintiffs"; "Defendants did not accurately disclose the settlement costs and the monthly costs and payment amount to the Plaintiffs" and; "When Plaintiffs elect to make a [Qualified Written Request] and other documents relating to the Mortgage Loan and to this date, the Defendants must produce the Note or provide proof of ownership."  (Compl. ¶¶ 29-31 (#1).)  Plaintiffs do not cite to any specific RESPA provision that was allegedly violated by such conduct.

RESPA requires that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period."  12 U.S.C. § 2605(e)(1)(A).  With respect to Plaintiffs' allegation regarding a Qualified Written Request ("QWR"), Plaintiffs do not allege to whom specifically Plaintiff made a QWR, when such a request was made, how Defendants failed to respond to the request, if the 20 day statutory period for response has lapsed, or how WMC

meets the statutory definition of a "servicer."  <u>See</u> <u>Delino v.</u>
<u>Platinum Cmty. Bank</u>, 628 F. Supp. 2d 1226, 1232 (S.D. Cal.
2009)(dismissing a plaintiff's RESPA claims on such grounds).
Moreover, Plaintiffs allegation that "[w]hen Plaintiffs elect to
make a QWR and other documents relating to the Mortgage Loan and to
this date, the Defendants must produce the Note or provide proof of
ownership," (Compl. ¶ 31 (#1)), is not only too vague to survive a
motion to dismiss, it is virtually incomprehensible, and thus fails
to put QWC on sufficient notice of alleged wrongdoing.

　　RESPA also provides that "[e]ach servicer of any federally
related mortgage loan shall notify the borrower in writing of any
assignment, sale, or transfer of the servicing of the loan to any
other person."  12 U.S.C. § 2605(b)(1).  "Servicer" is defined in
the statute as, "the person responsible for servicing of a loan
(including the person who makes or holds a loan if such person also
services the loan)."  12 U.S.C. § 2605(i)(2).  Plaintiff fails to
state a claim under 12 U.S.C. § 2605(b)(1) for failure to notify of
transfer, sale or assignment.  Plaintiffs do not allege when any
such alleged transfer, sale or assignment took place, or what
entities were involved and therefore had the duty to notify.  <u>See</u>
<u>Delino</u>, 628 F. Supp. 2d at 1232.

　　Finally, Plaintiffs' claim regarding Defendants' failure to
disclose settlement costs, payment amounts and monthly costs also
fails.  The part of RESPA on which we presume Plaintiff relies is
section 2603.  Under section 2603, the lender must complete and make
available to the borrower either before or at settlement a uniform
settlement statement reflecting the actual settlement costs.  12

U.S.C. § 2603(b).  There is no private right of action for claims
arising under section 2603 of RESPA.  See Bloom v. Martin, 865 F.
Supp. 1377, 1384 (N.D. Cal. 1994)(so stating).  Plaintiffs second
claim for relief thus fails, and will be dismissed.

**C. Truth in Lending Act**

Plaintiffs allege that Defendants violated the Truth in Lending
Act (TILA), 55 U.S.C. §§ 1601-1667(f), by failing to disclose
material terms of their loan and misrepresenting certain loan terms.
Defendants contend that plaintiffs' TILA claim is barred by the
statute of limitations.

TILA provides a one-year statute of limitations for claims for
civil damages and a three-year limitations period for claims for
rescission.  15 U.S.C. § 1640(e); Id §§ 1635(a) and (f).
Plaintiffs' claim is governed by TILA's statute of limitations.
Plaintiffs' TILA claim arose upon the execution of loan documents on
or about April 13, 2006.  The statute of limitations on Plaintiffs'
claim for damages would thus have expired on April 13, 2007; their
claim for rescission would have expired on April 13, 2009.
Plaintiffs did not file this action until June 30, 2009.  Thus, the
claim is time-barred, unless the statute of limitations was tolled.

The Ninth Circuit has held that equitable tolling of claims for
damages under TILA may be appropriate "in certain circumstances,"
and can operate to "suspend the limitations period until the
borrower discovers or had reasonable opportunity to discover the
fraud or non-disclosures that form the basis of the TILA action."
King v. California, 784 F.2d 910, 914-15 (9th Cir. 1986).  District
courts have discretion to evaluate specific claims of fraudulent

concealment and equitable tolling and "to adjust the limitations period accordingly." Id. at 915. "Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it "is not generally amenable to resolution on a Rule 12(b)(6) motion." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995). When, however, a plaintiff does not allege any facts demonstrating that he or she could not have discovered the alleged violations by exercising due diligence, dismissal may be appropriate. See Meyer v. Ameriquest Mortgage Co., 342 F.3d 899, 902-03 (9th Cir. 2003) (refusing to toll statute of limitations on TILA claim because plaintiff was in full possession of all loan documents and did not allege any concealment of loan documents or other action that would have prevented discovery of the alleged TILA violations).

Here, Plaintiffs fail to allege that Defendants concealed anything so as to prevent Plaintiffs from discovering any potential TILA claims. As such, Plaintiffs are not entitled to equitable tolling of their TILA damages claim. See Meyer, 342 F.3d at 902-03. Accordingly, we conclude that dismissal of Plaintiffs' TILA claim for damages is appropriate.

**D. Rescission and Declaratory Relief**

Plaintiffs' fourth claim for relief seeks rescission and declaratory relief. Rescission and declaratory relief are equitable remedies and not independent causes of action. Because we dismiss the substantive claims underlying Plaintiffs' request for equitable relief, we need not address Plaintiffs' request for rescission and declaratory relief independently.

1    Nevertheless, as discussed above, to the extent that
2 Plaintiffs' request for rescission is premised on the alleged TILA
3 violation, the request is time-barred.

4    **E.  Unfair Lending Practices**

5    Plaintiffs obtained the loan at issue in this case on April 13,
6 2006.  Plaintiffs allege that Defendants violated Nev. Rev. Stat. §
7 598D.100 because they "knowingly and intentionally made the Mortgage
8 Loan to the Plaintiffs based solely on the Plaintiffs' equity in the
9 Subject Property and without determining that the Plaintiffs had the
10 ability to repay the Mortgage Loan from other assets, including,
11 without limitation, Plaintiffs' income." (Compl. ¶ 50 (#1).)

12           1. The 2007 Amendments to Nev. Rev. Stat. § 598D.100

13   The Nevada Legislature adopted Assembly Bill 440 during the
14 2007 session, which amended Nev. Rev. Stat. Chapter 598D, effective
15 October 1, 2007.  The bill, inter alia, redefined the scope of "home
16 loan[s]" subject to the chapter's provisions.  See A.B. 440, Section
17 2, 2007 Nev. Stat. 2846 (" AB 440 ").  The definition of "home loan"
18 in the pre-amendment version of Nev. Rev. Stat. ¶ 598D.040 was as
19 follows:

20       "Home loan" means a consumer credit transaction that 1. Is
         secured by a mortgage loan which involves real property
21       located within this State; and 2. Constitutes a mortgage
         under § 152 of the Home Ownership and Equity Protection Act
22       of 1994, 15 U.S.C. § 1602(aa), and the regulations adopted
         by the Board of Governors of the Federal Reserve System
23       pursuant thereto, including, without limitation, 12 C.F.R.
         § 226.32.
24

25 NEV. REV. STAT. ¶ 598D.040 (2006).

26   The 2007 legislation redefined the operative term "home loan,"
27 inserting a second "without limitation" before the clause about the

28                                  9

1   Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §

2   1602(aa), and the regulations adopted by the Board of Governors:

> "Home loan" means a consumer credit transaction that is
> secured by a mortgage loan which involves real property
> located within this State and includes, without limitation,
> a consumer credit transaction that constitutes a mortgage
> under § 152 of the Home Ownership and Equity Protection Act
> of 1994, 15 U.S.C. § 1602(aa), and the regulations adopted
> by the Board of Governors of the Federal Reserve System
> pursuant thereto, including, without limitation, 12 C.F.R.
> § 226.32.

NEV. REV. STAT. § 598D.040 (2008)

In other words, though the post-amendment version is more expansive, the pre-amendment version of Nev. Rev. Stat. Chapter 598D regulated only those home loans that constituted mortgages under HOEPA, 15 U.S.C. § 1602(aa), and the regulations adopted by the Board of Governors of the Federal Reserve System.

15 U.S.C. § 1602(aa)'s definition of mortgage excludes residential mortgage transactions.  15 U.S.C. § 1602(aa)(1). Residential mortgage transactions are transactions "in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  15 U.S.C. § 1602(w).  Because the loan at issue in this case qualifies as a residential mortgage transaction, it was not regulated by Nev. Rev. Stat. § 598D.  Thus, the pre-amendment version of the statute cannot apply to Plaintiffs' home loan.

The post-amendment version is more expansive, effectively covering any home loan for property located in Nevada.  However,

section 598D as amended lacks any provision for its retroactive application, and civil statutes are normally presumed to operate only prospectively.  <u>United States v. Perry</u>, 431 F.2d 1020, 1023 (9th Cir. 1970).  The broader post-amendment language is therefore only applicable to loans issued after October 1, 2007.

The Complaint thus fails to state a claim under the Unfair Lending Act because Plaintiffs obtained the loan at issue on April 13, 2006, and the version of Nev. Rev. Stat. ¶ 598D.040 in force at that time excluded from its coverage Plaintiffs' loan.

**F. Breach of Contract**

Plaintiffs' fifth claim for relief is breach of contract. Plaintiffs' allegations under this claim are conclusory and vague. The only fact alleged with respect to this claim is related to Defendants' conduct during the loan application process, before any contract was entered into between the parties.  Plaintiffs do not allege what contract is at issue, nor do they identify what provisions of that contract were breached or how.  Plaintiffs' fifth claim for relief does not provide sufficient notice to WMC and cannot survive a motion to dismiss.

**G. Breach of Covenant of Good Faith and Fair Dealing**

In every contract, there is an implied covenant of good faith and fair dealing: "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith."  <u>Hilton Hotels Corp. v. Butch Lewis Prods., Inc.</u>, 808 P.2d 919, 923 (Nev. 1991).  A breach of the covenant occurs "[w]here the terms of a

contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract . . . ."   Id. at 922-23

Plaintiffs bring a claim for breach of the implied covenant of good faith and fair dealing.  Plaintiffs do not, however, allege a single fact that would establish that the manner in which Defendants complied with the contracts at issue — apparently the Deed of Trust and Promissory Note — contravened the intention or spirit of the contracts.  Thus, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing will be dismissed.

## IV.  Leave to Amend

Under Rule 15(a) leave to amend is to be "freely given when justice so requires."  In general, amendment should be allowed with "extreme liberality."  Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quoting Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990)).  If factors such as undue delay, bad faith, dilatory motive, undue prejudice or futility of amendment are present, leave to amend may properly be denied in the district court's discretion.  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003).

In light of the liberal spirit of Rule 15(a), Plaintiffs should have an opportunity to amend their complaint.  There is no reason why Plaintiffs could not cure the deficiencies we have noted here, or at least some of them, such as the conclusory and vague allegations against undifferentiated defendants.  Should Plaintiffs choose to do so, however, they shall plead facts, as opposed to

12

legal conclusions.  If the amended complaint is similarly deficient, we may be forced to conclude that leave to further amend would be futile.

## V. Conclusion

Plaintiffs have failed to state a claim upon which relief could be granted.  Plaintiffs will be given leave to amend.  Should they choose to do so, however, they shall plead facts, not legal conclusions.

**IT IS THEREFORE HEREBY ORDERED THAT** Defendant's Motion to Dismiss (#6) is **GRANTED**.  Plaintiffs shall have 21 days within which to file an amended complaint.

DATED: January 15, 2010.

_____
UNITED STATES DISTRICT JUDGE

13